**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**CENTRAL MUTUAL INSURANCE
COMPANY,**

                    **Plaintiff,**              1:13-cv-1134
                                                  (GLS/CFH)

                        **v.**

**WILLIAM P. WILLIG,** as Executor
of the Estate of William J.
Morgan, **et al.,**

                    **Defendants.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Rivkin, Radler Law Firm            FRANK M. MISITI, ESQ.
West Tower, 10th Floor             MARC P. GORFINKEL, ESQ.
926 RXR Plaza                          WILLIAM M. SAVINO, ESQ.
Uniondale, NY 11556-0926

**FOR THE DEFENDANTS:**
Herzog Law Firm                    JAMES M. REILLY, ESQ.
7 Southwoods Boulevard
Albany, NY 12211-3163

**Gary L. Sharpe
Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Central Mutual Insurance Company commenced this action

against defendants William P. Willig, in his capacity as the executor of the Estate of William J. Morgan (the "Morgan Estate"), Norman R. Levy, and Doreen Levy,[1] seeking a judgment declaring, among other things, that the insurance contracts entered into by Central and the Levys do not obligate Central to defend or indemnify the Morgan Estate for any amounts in connection with an underlying state court action. (Compl., Dkt. No. 1.) Pending is Central's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (Dkt. No. 17.) For the reasons that follow, Central's motion is granted.

## II. Background[2]

### A. Facts

This action concerns the scope of two insurance policies, an easement on the shores of Lake George, and a long-standing feud between Levy and Morgan that lives on, even after Morgan's death.

*1. The Insurance Policies*

---

[1] Throughout this Memorandum-Decision and Order, the court refers to Norman Levy as "Levy," and to Norman and Doreen Levy, together, as "the Levys." The court also notes that the Levys have not yet appeared in this action.

[2] The facts are drawn from Central's complaint and presented in the light most favorable to it. Additionally, the court considers "any written instrument attached to [the complaint]." *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014) (internal quotation marks and citation omitted).

2

Central issued two insurance policies—a Homeowners Policy, number FMH 4245859, (Dkt. No. 1, Attach. 1), and a Personal Umbrella Policy, number PXS 4245870, (Dkt. No. 1, Attach. 2), (collectively, "the Policies"). Both of the Policies identify the Levys as the named insureds, and Morgan, now deceased, is included as an additional insured. (Dkt. No. 1, Attachs. 1, 2.) Among other things, the Policies promise to defend and indemnify the insureds "[i]f a . . . suit is brought against an 'insured' for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence.'" (Dkt. No. 1, Attach. 1 at 20, 34, 36; Dkt. No. 1, Attach. 2 at 7.) Notably, an "'occurrence'" is defined as "an accident." (Dkt. No. 1, Attach. 1 at 8; Dkt. No. 1, Attach. 2 at 6.) Further, as relevant to this motion, one exclusion under the Policies is of note: the Policies exclude coverage for "'[b]odily injury' or 'property damage' which is expected or intended by an 'insured,'" ("the Exclusion"). (Compl. ¶¶ 23, 24; Dkt. No. 1, Attach. 1 at 22, 34, 36; Dkt. No. 1, Attach. 2 at 7.)

2. *The Underlying Action*

On March 23, 2013, Levy filed a complaint against Willig, in his capacity as the executor of Morgan's estate, and Tomas Decea, Morgan's tenant ("the Underlying Complaint" or "the Underlying Action"). (Dkt. No. 1,

3

Attach. 3.) In general, the Underlying Complaint tells the story of the unrelenting battle between Morgan and Levy, over an easement, held by Levy, on the northerly and southerly sides of Morgan's property, which sits on Lake George; the easement grants Levy access to the shores, and the right to construct and use a temporary dock. (*See generally id.*) Specifically, the Underlying Complaint alleges that, from 2002 through 2008, Morgan himself undertook several actions to impede Levy's use of his easement, including: (1) "intentionally and unlawfully remov[ing] and destroy[ing]" Levy's dock and "block[ing Levy]'s access to [his] dock area," (*id.* ¶ 19); (2) refusing to comply with New York state court orders[3] and stipulations that required him to reconstruct the dock, (*id.* ¶¶ 20-28); (3) altering the grade, pitch, and size of the northerly easement so that the easement was rendered unusable—actions for which he was ultimately held in contempt, (*id.* ¶¶ 25-26); and (4) blocking the easement and dock with boards containing nails protruding upward and his vehicle, (*id.* ¶ 31).

Later, in 2010, Morgan rented his property to Decea, at a discounted price, and "with the express understanding, agreement[,] and purpose of

---

[3] Levy first commenced an action against Morgan in state court in 2002. (Dkt. No. 1, Attach. 3 ¶ 20.) As a result of that action, two orders were issued, one mandating that Morgan reconstruct Levy's dock, and, after Morgan refused to comply, another granting Levy access to a southerly easement. (*Id.* ¶¶ 21, 28.)

having . . . Decea . . . engage in a course of conduct to physically remove [Levy] from the Morgan property and to interrupt and interfere with [Levy]'s deeded and court ordered rights." (*Id.* ¶¶ 32-33, 115.) Specifically, on July 3, 2010, after discovering that Decea physically blocked the right-of-way,[4] Levy parked his truck on Morgan's lawn, and walked down to the dock. (*Id.* ¶ 48.) When Levy returned to his vehicle, he was arrested and charged with reckless endangerment and criminal mischief; the criminal complaint was based entirely on a supporting deposition from Decea. (*Id.* ¶¶ 50, 51.) Consequently, an order of protection was entered against Levy, which required him to stay away from Decea, his home, and his family, but still permitted Levy to use the easement. (*Id.* ¶¶ 54-55.) Despite his right to continue to use the easement, Levy was again arrested on July 4, 2010, and charged with criminal contempt for violating the order of protection. (*Id.* ¶ 56.)

The Underlying Complaint alleges that Decea's complaints "were false and were known by . . . Decea to be false," and filed at the request of Morgan to remove Levy from the property. (*Id.* ¶¶ 60, 61.) Days later,

---

[4] To block the right-of-way, Decea: (1) planted a tree in the middle of the easement, with a ring of rocks around the tree; (2) constructed a three-and-a-half foot wide fire pit; and (3) placed other objects, including chairs, a ladder, a pile of gravel, a lawn spreader, and a wheelbarrow on the right-of-way, (*id.* ¶ 44).

5

Morgan and Decea filed a motion seeking to terminate all of Levy's easement rights; the motion was based on the criminal complaints and an affidavit from Decea. (*Id.* ¶¶ 62-63.) As a result of these actions, in the Underlying Complaint, Levy asserts claims of malicious prosecution, abuse of process, and prima facie tort, and seeks, among other things, damages "for all of his physical, emotional, psychological injuries suffered from the defendants' wrongful conduct." (*Id.* ¶¶ 93-119.)

On June 14, 2013, the Morgan Estate, as an additional insured under the Policies, forwarded the Underlying Complaint to Central, seeking defense and indemnification. (Compl. ¶ 17; Dkt. No. 1, Attach. 4.) On July 23, 2013, Central responded, and informed the Morgan Estate that it would provide a defense, but also reserved its rights to assert any coverage defenses that may apply. (Compl. ¶¶ 18-19; Dkt. No. 1, Attach. 5.)

**B.     Procedural History**

On September 12, 2013, Central filed the instant diversity action, seeking a judgment declaring that, under the Policies, it has no obligation to defend or indemnify the Morgan Estate for any amounts in connection with the underlying action. (*See generally* Compl.) The Morgan Estate

filed an answer, and asserted a counterclaim[5] and crossclaim.[6] (Dkt. No. 11.) While Central filed an answer to the Morgan Estate's counterclaim, (Dkt. No. 14), the Levys have not filed an answer, and, in fact, have yet to appear in the action. Thereafter, Central filed its motion for judgment on the pleadings, which is now before the court. (Dkt. No. 17.)

### III. Standard of Review

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Wright v. Monroe Cmty. Hosp.*, 493 F. App'x 233, 234 (2d Cir. 2012) (internal quotation marks and citation omitted). For a full discussion of that standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

### IV. Discussion[7]

---

[5] The Morgan Estate's counterclaim seeks a declaration that Central must defend and indemnify it in the Underlying Action. (Dkt. No. 11 at 3.)

[6] The Morgan Estate's crossclaim seeks damages against Levy for breach of his court-ordered obligation to provide a certificate of liability insurance in the amount of $1 million, naming Morgan as an insured, in the event that the court decide that Central is under no obligation to defend or indemnify the Morgan Estate. (Dkt. No. 11 at 4.)

[7] The parties do not dispute that New York law applies. (*See generally* Dkt. No. 18; Dkt. No. 22.)

In support of its motion, Central argues that it is not obligated to defend or indemnify the Morgan Estate for several reasons. (Dkt. No. 18 at 8-21.) Primarily, however, Central contends that it need not defend or indemnify the Morgan Estate because the Underlying Complaint alleges that Morgan engaged in a course of intentional conduct that was designed to cause injury to Levy, and therefore: (1) there has been no "occurrence"; and (2) the Exclusion applies to the Underlying Action. (*Id.* at 8-17.) The Morgan Estate claims that Central failed to timely disclaim coverage as required by New York Insurance Law § 3240(d), and that Morgan's involvement in the allegations in the Underlying Complaint is unclear, such that it would be inappropriate for the court to grant Central's motion. (Dkt. No. 22 at 6-9, 10-11.) The court agrees with Central.

A. **New York Insurance Law § 3420(d)(2)**

First, the court will address the Morgan Estate's argument that Central may not rely on the exclusions because it failed to timely disclaim coverage under New York Insurance Law § 3420(d)(2). (Dkt. No. 22 at 10-11.) Central contends, and the court agrees, that § 3420(d)(2) does not apply here because it never disclaimed coverage; it simply sent a reservation of rights letter. (Dkt. No. 24 at 7-10.)

8

New York Insurance Law § 3420(d)(2) states, in relevant part:

> If under a liability policy issued or delivered in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of . . . any . . . type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.

It is well established, however, that "[a] reservation of rights letter has no relevance to the question whether the insurer has timely sent a notice of disclaimer of liability or denial of coverage." *Hartford Ins. Co. v. Cnty. of Nassau*, 46 N.Y.2d 1028, 1029 (1979). "Courts considering the question of whether a letter to an insured is a disclaimer of coverage or a reservation of rights have held that sufficiently definite language must be used in order for the communication to constitute a disclaimer," *Tudor Ins. Co., Inc. v. McKenna Assocs.*, No. 01CIV 0115, 2005 WL 1138386, at *5 (S.D.N.Y. May 12, 2005), and notice of a disclaimer should be in "unequivocal[ and] unambiguous" language, *U.S. Fid. & Guar. Co. v. Treadwell Corp.*, 58 F. Supp. 2d 77, 90 (S.D.N.Y. 1999) (internal quotation marks and citation omitted).

Here, on June 14, 2013, the Morgan Estate forwarded the Underlying Complaint to Central, seeking defense and indemnification under the

9

Policies. (Compl. ¶ 17; Dkt. No. 1, Attach. 4.) Over one month later, by letter dated July 23, 2013, Central informed the Morgan Estate that it would provide a defense, but that its "assessment reveals that Central . . . may in fact be under no duty to defend or indemnify the Morgan [E]state in connection with some or all of the claims for relief in the [U]nderlying [Action]." (Dkt. No. 1, Attach. 5 at 2.) Accordingly, Central reserved its rights to assert any coverage defenses that may apply. (*Id.* at 2-3.)

Central's June 14, 2013 letter cannot be fairly read "unequivocal[ly and] unambiguous[ly]" to disclaim coverage. *U.S. Fid. & Guar. Co.*, 58 F. Supp. 2d at 90. Simply put, the clear and unambiguous disclaimer language requirement is absent, and Central's letter is properly categorized as a reservation of rights letter, which has no relevance to the question of timeliness under § 3420(d)(2). *See U.S. Underwriters Ins. Co. v. Klimashevsky*, 21 F. App'x 47, 50 (2d Cir. 2001) ("Although Underwriters contends that its May 1999 letter constituted a disclaimer, that letter expressly states, 'US Underwriters Insurance Company reserves its rights to issue a disclaimer of coverage.' At no point does the letter purport to exercise those rights."). Accordingly, § 3420(d)(2) does not apply to this case.

**B.     Application of The Policies**

Central argues that it has no duty to defend or indemnify the Morgan Estate because there has been no "occurrence" triggering coverage, and because the Policies exclude coverage for bodily injury that is expected or intended by an insured. (Dkt. No. 18 at 9-15.) The Morgan Estate responds that the allegations in the Underlying Complaint are insufficient to show Morgan's involvement. (Dkt. No. 22 at 6-9.) The court agrees with Central.

Under New York law, an insurer has an "exceedingly broad" duty to defend the insured, *Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006) (internal quotation marks and citation omitted), and the duty to defend is even broader than the duty to indemnify, *see Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310 (1984). An insurer's obligation to provide a defense is triggered "whenever the allegations of the complaint suggest . . . a reasonable possibility of coverage." *Auto. Ins. Co. of Hartford*, 7 N.Y.3d at 137 (internal quotation marks and citation omitted).

This duty to defend on the insurer's part remains, unless the insurer can "establish, as a matter of law, that there is no possible factual or legal basis on which the insurer might eventually be obligated to indemnify [the

11

insured] under any provision contained in the policy." *Villa Charlotte Bronte, Inc. v. Commercial Union Ins. Co.*, 64 N.Y.2d 846, 848 (1985). For this reason, an insurer who seeks to be relieved of the duty to defend based on a policy exclusion

> bears the heavy burden of demonstrating that the allegations of the complaint cast the pleadings wholly within that exclusion, that the exclusion is subject to no other reasonable interpretation, and that there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision.

*Frontier Insulation Contractors, Inc. v. Merchs. Mut. Ins. Co.*, 91 N.Y.2d 169, 175 (1997). Further, "[i]f any of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action." *Id.*

Moreover, a court reviewing an insurance policy must remain mindful that it is a "contract[ ] to which the ordinary rules of contractual interpretation apply." *Accessories Biz, Inc. v. Linda & Jay Keane, Inc.*, 533 F. Supp. 2d 381, 386 (S.D.N.Y. 2008). New York insurance contracts are construed in light of "common speech." *Ace Wire & Cable Co. v. Aetna Cas. & Sur. Co.*, 60 N.Y.2d 390, 398 (1983). Insurance contracts also must be interpreted "according to the reasonable expectation and purpose

of the ordinary businessman when making an ordinary business contract." *GMAC v. Nationwide Ins. Co.*, 4 N.Y.3d 451, 457 (2005) (internal quotation marks and citations omitted). Where there are ambiguous terms in a policy, these "must be construed in favor of the insured and against the insurer." *White v. Cont'l Cas. Co.*, 9 N.Y.3d 264, 267 (2007).

Here, as an initial matter, the Policies promise to defend and indemnify the insureds only in the event of an "occurrence." (Dkt. No. 1, Attach. 1 at 20, 34, 36; Dkt. No. 1, Attach. 2 at 7.) An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results . . . in . . . '[b]odily injury'[] or '[p]roperty damage.'" (Dkt. No. 1, Attach. 1 at 8; Dkt. No. 1, Attach. 2 at 6.) The Policies do not define "accident," but courts interpreting similar provisions have opined that certain intentional acts, which actually cause their intended consequences, are not considered "accidents." *See Accessories Biz*, 533 F. Supp. 2d at 386-87; *QBE Ins. Co. v. Jinx-Proof Inc.*, 102 A.D.3d 508, 513 (1st Dep't 2013) (noting that "an intentional act would not constitute an 'occurrence' within the meaning of the policy" where definition of "occurrence" was identical to that here)

(Manzanet-Daniels, J., concurring); *State Farm Fire and Cas. Co. v. Whiting*, 53 A.D.3d 1033, 1034 (4th Dep't 2008) (noting that insurer had no duty to defend or indemnify insured with respect to a cause of action alleging an intentional tort because "an incident is an occurrence, i.e., an accident, if, 'from the point of view of the insured, . . . [the incident resulting in injury] was unexpected, unusual and unforeseen'" (quoting *Miller v. Cont'l Ins. Co.*, 40 N.Y.2d 675, 677 (1976)); *Ward v. Sec. Mut. Ins. Co.*, 192 A.D.2d 1000, 1001 (3d Dep't 1993). Here, because the conduct alleged in the Underlying Action was intentional, and not accidental, as discussed more thoroughly below, there was never an "occurrence," and coverage under the Policies was never triggered in the first instance.[8]

Furthermore, and similarly, the Policies exclude coverage for "'[b]odily injury' or 'property damage' which is expected or intended by an 'insured.'"[9] (Dkt. No. 1, Attach. 1 at 22, 34, 36; Dkt. No. 1, Attach. 2 at 7.) In the Underlying Action, Levy alleges that "Decea[] and . . . Morgan

---

[8] Notably, the Morgan Estate does not dispute that there was never an "occurrence." It is simply silent on this issue.

[9] For the purpose of the interpretation of this exclusion, the parties do not dispute that Morgan was an "insured" or that Levy suffered "bodily injury" or "property damage." Accordingly, the court limits its analysis to the disputed issue of whether the injury to Levy was "expected or intended" by Morgan.

14

. . . have engaged in a course of conduct . . . which was intended to and did violate [Levy]'s legal personal and property rights." (Dkt. No. 1, Attach. 3 ¶ 6.) Indeed, the Underlying Complaint is replete with allegations of intentional conduct, by both Morgan and Decea. For instance, the Underlying Complaint claims, among other things, that: (1) "Morgan intentionally and unlawfully removed and destroyed [Levy]'s . . . dock"; (2) "Morgan openly stated that he had absolutely no intention of complying with [a state court] Order and . . . that he had no intentions of ever allowing [Levy] on the Morgan Property"; (3) at Morgan's direction, Decea blocked Levy's easement with a tree, rocks, a fire pit, and other materials; and (4) Decea caused Levy to be arrested on two occasions based on complaints that "were false and were known by . . . Decea to be false" and that were filed at Morgan's request to remove Levy from the property. (*Id.* ¶¶ 19, 22, 33, 44, 60-61, 96, 104-05, 110.)

In fact, in its opposition, the Morgan Estate does not even dispute that the conduct was intentional. Rather, it argues that Morgan's involvement in the conduct giving rise to Levy's claims is "unclear" because the allegations directly involving Morgan are simply "background"

15

information, and unrelated to the claims in the Underlying Complaint.[10] (Dkt. No. 22 at 6-9.) The Underlying Complaint, however, alleges that Morgan directed Decea's action, and Decea was acting on Morgan's behalf: "Morgan rented the . . . Property to . . . Decea . . . with the express understanding, agreement and purpose of having . . . Decea . . . engage in a course of conduct to physically remove [Levy] from the Morgan property and to interrupt and interfere with [Levy]'s deeded and court ordered rights." (*Id.* ¶ 33.) The Morgan Estate even concedes that "[t]here are, admittedly, general allegations that Decea was acting at Morgan's behest."[11] (Dkt. No. 22 at 7.)

Accordingly, the court is satisfied that the Underlying Complaint

---

[10] The Morgan Estate also contends that Central may not rely on the Exclusion because the Levys already received court-ordered remedies for Morgan's wrongdoing between 2002 and 2008. (Dkt. No. 22 at 6.) This argument is unavailing. The Underlying Complaint notes that Morgan expressed that he had no intention of complying with the court orders, in fact did not comply with those orders, (Dkt. No. 1, Attach. 3 ¶¶ 22-31), and "hired" Decea to continue a course of conduct that thwarted Levy's use of his easement, and directly violated those court orders, (*id.* ¶¶ 32-35). Accordingly, Morgan is not absolved of responsibility here simply by virtue of previous state court orders condemning his conduct.

[11] Furthermore, and notably, the causes of action in the Underlying Complaint—malicious prosecution, prima facie tort, and abuse of process—each include elements of an intent to do harm or malice. *See Savino v. City of N.Y.*, 331 F.3d 63, 72 (2d Cir. 2003) (noting that, under New York law, a plaintiff must prove that the defendant acted with "malice" for a malicious prosecution claim); *McKenzie v. Dow Jones & Co., Inc.*, 355 F. App'x 533, 536 (2d Cir. 2009) (explaining that, under New York law, an element of prima facie tort is "an intentional infliction of harm" (internal quotation marks and citations omitted)); *PSI Metals, Inc. v. Firemen's Ins. Co. of Newark, N.J.*, 839 F.2d 42, 43 (2d Cir. 1988) (stating that, under New York law, an element of an abuse of process claim is "an intent to do harm without excuse or justification").

alleges that Morgan—and Decea, at Morgan's direction—engaged in a continuous course of conduct that was designed to remove Levy from Morgan's property, even at the cost of bodily injury or property damage. The Exclusion is clear and unambiguous, there is no reasonable interpretation of the Underlying Complaint that would plausibly suggest that Central would be under any obligation to indemnify the Morgan Estate, and, therefore, the entirety of the Underlying Complaint fits within the Exclusion. *See Silverman Neu, LLP v. Admiral Ins. Co.*, 933 F. Supp. 2d 463, 475-79 (E.D.N.Y. 2013) (holding that a "Wrongful Act" exclusion in an insurance policy was "stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case"); *Accessories Biz*, 533 F. Supp. 2d at 386-87 (holding that insurance policy exclusion barred coverage where "the underlying action . . . alleges only intentional acts on the part of the plaintiff"). Central, therefore, is entitled to judgment on the pleadings on this ground.[12]

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

---

[12] By virtue of the discussion above, the Morgan Estate's counterclaim, which seeks a declaration that Central must defend and indemnify it in the Underlying Action, (Dkt. No. 11 at 3), is dismissed. However, the Morgan Estate's crossclaim remains outstanding, and the court may not, at this juncture, close the case entirely.

**ORDERED** that Central Mutual Insurance Company's motion for judgment on the pleadings (Dkt. No. 17) is **GRANTED** and Central Mutual Insurance Company does not have, nor ever had, a duty to defend or indemnify the Morgan Estate in connection with the Underlying Action; and it is further

**ORDERED** that the Morgan Estate's counterclaim, (Dkt. No. 11 at 3), is **DISMISSED**; and it is further

**ORDERED** that the Clerk is directed to enter judgment in favor of Central Mutual Insurance Company; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

June 27, 2014
Albany, New York

*/s/ Gary L. Sharpe*
Gary L. Sharpe
Chief Judge
U.S. District Court